Karen Gay SNOOK, Appellee,

v.

W. B. HERRMANN, d/b/a Herrmann Gardens, Employer and Auto-Owners (Mutual) Insurance Company, Insurance Carrier, Appellants.

No. 53028.

Supreme Court of Iowa.

Sept. 5, 1968.

Davis, Huebner, Johnson & Burt, Des Moines, for appellants.

Dull & Keith, Ottumwa, for appellee.

MOORE, Justice.

This is an appeal by an employer and insurance carrier from trial court's judgment sustaining industrial commissioner's allowance of workmen's compensation benefits to the natural born child of an employee electrocuted while trimming trees. The child, plaintiff-appellee, had been adopted by her maternal grandparents approximately six months before her father's death.

Appellants assert the trial court erred in holding (1) a natural child of a deceased employee, adopted by and living with adoptive parents prior to death of the natural parent, was conclusively presumed to be wholly dependent on the deceased employee under Code section 85.42 and (2) that the deceased employee was not engaged in any agricultural pursuit as exempted from coverage under Code section 85.1(3).

Walter Raymond Snook and the present Bette Eslinger Starks were married in 1956. To this marriage a daughter, Karen Gay, was born on December 21, 1956. Shortly after the marriage Snook was imprisoned at the Anamosa reformatory for robbery. During his incarceration Bette instituted a divorce proceeding which culminated in a divorce decree on October 1, 1958. Bette was granted custody of Karen and Snook was ordered to pay $15.00 per week child support.

Snook was released in October, 1958 but was returned to the reformatory in March, 1960 where he was incarcerated until Sep-

tember, 1962. His child support payments were sporadic.

Karen resided at all times, exclusive of a six months period, with her maternal grandparents, Mr. and Mrs. Howard Rodney Eslinger, who fed, clothed and otherwise provided support for her.

On January 18, 1963 Mr. and Mrs. Eslinger filed a petition for adoption which was granted by the court on February 1, 1963 under which Karen's name was changed to Karen Gay Eslinger. The natural mother, Bette, consented to the adoption. The record is unclear as to whether Snook was again in prison during the adoption proceedings. He did not consent to the adoption.

On July 19, 1963 Snook came in contact with an electric line resulting in his electrocution. His injury and death arose out of and in the course of his employment as a tree trimmer for Herrmann Gardens, defendant-appellant herein.

Karen Gay, as minor claimant, filed an application on March 31, 1964 with the industrial commissioner seeking death benefits pursuant to Code section 85.42(2), naming Herrmann Gardens and its insurance carrier, Auto-Owners (Mutual) Insurance Company, defendants.

Following hearing the deputy industrial commissioner held defendants liable to plaintiff-claimant for the statutory death benefits. He held Karen Gay to be conclusively dependent upon her natural father within the meaning of section 85.42(2), Code, 1962 and found Snook not to be engaged in an agricultural pursuit at the time of his death so as to be excluded from coverage under section 85.1(3). On review the industrial commissioner made like findings and affirmed the award. Defendants' appeal to the district court resulted in an affirmance of the commissioner's award.

I. Appellants' first assigned error presents a question of first impression before this court and requires interpretation of Code section 85.42 which provides:

"Conclusively presumed dependent. The following shall be conclusively presumed to be wholly dependent upon the deceased employee:

"1. The surviving spouse, (with exceptions here not applicable)

\* \* \* \* \* \*

"2. A child or children under sixteen years of age, and over said age if physically or mentally incapacitated from earning, whether actually dependent for support or not upon the parent at the time of his or her death. An adopted child or children shall be regarded the same as issue of the body. A child or children, as used herein, shall also include any child or children conceived but not born at the time of the employee's injury, and any compensation payable on account of any such child or children shall be paid from the date of their birth. A stepchild or stepchildren shall be regarded the same as issue of the body only when the stepparent has actually provided the principal support for such child or children."

Appellants contend determination of persons conclusively presumed dependent under subsection 2 was a question of law for the trial court and should be so treated on this appeal. We agree but are not persuaded the trial court's holding on this law issue was erroneous. Of course interpretation of the statute is a matter of law for the court. We have also repeatedly held where the facts are not in dispute and different inferences could not reasonably be drawn therefrom it becomes a question of law and the court is not bound by the commissioner's findings and conclusions. Bodish v. Fischer, Inc., 257 Iowa 516, 518, 519, 133 N.W.2d 867, and citations. The fact the deceased employee was the natural father of appellee is undisputed.

Courts of several jurisdictions have considered and construed similar statutory provisions. As we shall point out infra the holding of each except Georgia support the trial court's conclusion regarding sec-

tion 85.42(2). Several are discussed in the case note on Patton v. Shamburger, Tex.Civ.App.1967. 413 S.W.2d 155 in 17 Drake L.Rev. 275.

Appellants rely heavily on New Amsterdam Casualty Co. v. Freeland, 216 Ga. 491, 117 S.E.2d 538, where the Georgia Supreme Court was confronted with an almost identical question as presented here. The deceased employee (natural father) and his wife were divorced and the children had been adopted prior to his death by another who wholly supported them. The natural father was killed in the course of his employment.

The pertinent provision of the Georgia statute which the court was called upon to construe provided in part: "The following persons shall be conclusively presumed to be the next of kin wholly dependent for support upon the deceased employee: * * (c) A boy under the age of 18, or a girl under the age of 18, upon a parent. * * *"

The same statute, section 114–414 Georgia Code Annotated, provided the terms "boy", "girl", or "child" included stepchildren, legally adopted children and the term "parent" included stepparents and parents by adoption.

In reversing the trial court and court of appeals the Georgia Supreme Court cited the statutory adoption provision which divested the natural parents of all legal rights or obligations to the child upon entry of a decree of adoption and applied its rules of statutory construction to avoid what it considered an absurd and unjust result. The Georgia court apparently was motivated by an aversion to the possibility of double coverage which it was unwilling to attribute to the legislature.

At page 541 of 117 S.E.2d, the Georgia court says: "Where the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the result and consequences. It is the duty of the court to consider the results and con-

sequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature."

On the same page the court poses the hypothetical example of the simultaneous death of the natural and adoptive parents which it says would result in the "unreasonable and inequitable" consequence of double recovery under claimant's interpretation of the statute.

Subsequent cases following the holding in New Amsterdam are Alexander v. Employers Mutual Liability Ins. Co., 102 Ga. App. 750, 118 S.E.2d 215; United States Fidelity & Guaranty Co. v. Dunbar, 112 Ga.App. 102, 143 S.E.2d 663.

Considering the particular wording of our statute, section 85.42(2), and utilizing what we find to be the applicable rules of construction thereof we are unable to reach the same conclusion as that in the New Amsterdam case.

■ In construing statutes we search for the legislative intent as shown by what the legislature said, rather than what it should or might have said. Citation of authority for this general rule is unnecessary. See Rule 344(f), par. 13, Iowa Rules of Civil Procedure.

Concerning the workman's compensation law in Roe v. Roe, 259 Iowa 1229, 1237, 146 N.W.2d 236, 240, we say: "We must take the statute according to what it clearly provides and not what might have been said by the legislature."

■ It must be noted also that we have repeatedly held the workmen's compensation law, being a remedial statute, is to be liberally construed in favor of the employee. Roe v. Roe, supra; Crees v. Sheldahl Telephone Co., 258 Iowa 292, 296, 139 N.W.2d 190, 193; Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 459, 127 N.W.2d 636, 639, and citations. In the latter case we applied this rule where the surviving spouse

sought and was given workman's compensation benefits.

The trial court's findings and conclusions include: "The plain wording of Section 85.42(2), Code, 1962, eliminating a parent's support of a child under 16 years of age as a condition of dependency, the provisions of Chapter 600, Code, 1962, providing for annulment of an adoption within five years for mental illness of the foster child, the position taken by the Supreme Court of Iowa in Day v. Town Club, 241 Iowa 1264, 45 N.W.2d 222, and the legislature's inaction with respect to the exclusion of adopted children after that opinion, all support the Commissioner's conclusion." We agree.

The commissioner cited and relied on our holding in Day v. Town Club where we allowed a minor child to recover workmen's compensation benefits for her natural father's death although her parents were divorced and she was living in the home of her stepfather.

In Day v. Town Club, supra, 241 Iowa 1264, 1268, 45 N.W.2d 222, 225, we say: "In our judgment the fair and reasonable construction to place upon section 85.42, Code 1946, I.C.A., is that every child under 16 years of age is deemed to be 'conclusively dependent' upon its natural parent, even though at the time of death of the parent, due to an industrial accident, such child is residing in the home of a stepparent as a member of such family. While this will in some instances result in a double dependency, we do not find this to be disturbing and think it very analogous to the situation where an adopted child is granted the right to inherit not only from its natural parents but from its adoptive parents, as well. As said in Holmes v. Curl, 189 Iowa 246, [252,] 178 N.W. 406, 408 'Plaintiff did not lose her right to inherit from her father by her adoption, but acquired an additional right of inheritance.' "

Subsequent to the Day case the legislature amended section 85.42(2) by adding the requirement that a stepchild or stepchildren be regarded as issue of the body

"only when the stepparent has actually provided the principal support for such child or children." No change was made regarding an adopted child and the legislature apparently was not concerned with the possibility of double dependency. The legislative history of section 85.42(2) supports the ruling of the trial court.

Other jurisdictions when faced with the problem of an adopted child's right to workmen's compensation benefits upon death of a natural parent have held contrary to the Georgia cases and support the judgment of the trial court here.

In Holland Const. Co. v. Sullivan, 220 Ark. 895, 251 S.W.2d 120. Mr. and Mrs. Wooldridge had a son born in 1943. Mrs. Wooldridge died in 1945 and the child was adopted by Mr. and Mrs. Sullivan in 1946. Mr. Wooldridge was killed in 1947 and the son filed a claim for compensation. Although finding Mr. Wooldridge had not supported his son after the adoption, the court nevertheless found he was conclusively presumed dependent under a statute similar to our Code section 85.42(2). At page 121, 251 S.W.2d the Arkansas court states: "Thus, there is entirely absent from the 1939 Workmen's Compensation Law, any statement either (a) that the act of adoption takes a child out of the terminology of 'child' of the natural father, or (b) that actual dependency must be proved as regards a natural child under 18 years of age."

In Shulman v. New York Board of Fire Underwriters, 15 A.D.2d 700, 223 N.Y.S.2d 312, the sole question presented was whether a child legally adopted by another man was entitled under the workmen's compensation law to benefits upon the death of her father subsequent to the adoption. In holding she was so entitled pursuant to a statute similar to ours the court at page 313 says: "In the process of explaining the meaning of the word 'child' as used in the Workmen's Compensation Law, the Legislature did not exclude the offspring of natural parents. It simply extended the mean-

ing of the term to include certain parent-child relationships—natural and artificial—which, unless clarified, might be deemed not to be within the literal sense of the word. Had the purpose been to destroy the consanguineous connection between a father and his natural child adopted by another as the basis for an award of death benefits, the statutory definition certainly would have been so precisely written as to leave no doubt that such was its intent."

In Patton v. Shamburger, supra, Tex. Civ.App., 1967, 413 S.W.2d 155, the issue was whether the two minor children of the deceased employee (natural father) were entitled to workmen's compensation death benefits in view of the fact they had been adopted by their mother's second husband about two years prior to the fatal accident. Decedent had not contributed to the children's support since their adoption.

■ The Texas statute provided the death benefits were to be distributed according to the laws of descent and distribution. Vernon's Ann.Tex.Rev.Civ.Stat. Art. 8306, section 8a. Adopted children in Texas lose no right of inheritance from their natural parent by reason of the adoption. Our rule is the same as we point out in Day v. Town Club, supra.

In awarding the children workmen's compensation death benefits the Texas court at page 157, 413 S.W.2d said: "It is evident that our Legislature intended for the law of descent and distribution to determine the priority of classes entitled to recover such death benefits and provided that an adopted child should inherit from his natural parent." The court also quoted extensively from the Shulman case, supra.

Other cases reaching similar results and supporting the trial court's ruling are: Employers' Mut. Ins. Co. et al. v. Industrial Commission of Colorado et al., 70 Colo. 229, 199 P. 483; Stark v. Watson, Okl., 359 P.2d 191; In re Jones, 84 Idaho 327, 372 P.2d 406; Wilson v. Hill, 6 Terry (Del.) 251, 71 A.2d 425; Nordmark v. Indian Queen Hotel Co., 104 Pa.Super.,

139, 159 A. 200. See also 9 Schneider, Workmen's Compensation Text, Perm.Ed. section 1914; 2 Larson, Workmen's Compensation Law, section 62.30.

■ The workmen's compensation laws are special laws and control over general laws. The legislature has full power and authority to determine the class of persons to whom compensation shall be paid and to prescribe the conditions and limitations deemed proper for each class. If the legislature has enacted laws that are unjust, the correction thereof should be addressed to that body. Sanders v. Ray et al., 67 Idaho 200, 174 P.2d 836, 842.

■ Section 85.42(2) specifically creates a conclusive presumption of dependency upon a natural parent in favor of a child under sixteen years of age whether actually dependent for support or not upon the parent at the time of his or her death. It is not our function to rewrite the statute. Thompson Wholesale Co. v. Frink, 257 Iowa 193, 197, 131 N.W.2d 779, 781. We conclude appellants' first assigned error is untenable.

II. As material here Code section 85.1 provides: " * * * this chapter shall not apply to: * * * 3. Persons engaged in agriculture, insofar as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer." Appellants contend Snook was so engaged at the time of his death. The commissioner's finding to the contrary is amply supported by the record.

The employer, Herrmann Gardens, was engaged in a variety of activities which can be grouped in three major headings: nursery, greenhouse and truck gardens. W. B. Herrmann, the company owner, testified the nursery operation included lawn care, gardening, seeding, sodding, tree removal, stump removal and spraying. He categorized the work as agricultural in nature.

The company records reveal Snook had been working as a tree trimmer at least three weeks prior to his death. The company was insured under two separate classifications, one a nursery and the other a tree trimming classification, the latter necessitating a higher premium rate.

Snook at the time of his injury and death was trimming a tree preparatory to removing it at a residence within the city of Ottumwa.

We have previously defined agriculture within the meaning of section 85.1(3). "* * * 'Agriculture' is variously defined; but generally, in its broad sense, it is said to be 'the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.' * * * It is the equivalent to husbandry, and husbandry, Webster defines to be the business of a farmer, comprehending agriculture or tillage of the ground, the raising, managing, and fattening of cattle and other domestic animals, the management of the dairy and whatever the land produces." Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 159, 100 N.W.2d 115, 117.

■ Of course an employer may be engaged in two distinct occupations, one agricultural and one commercial, manufacturing, or otherwise industrial. Crouse v. Lloyd's Turkey Ranch, supra, 251 Iowa 156, 160, 100 N.W.2d 115, 118, and citations.

The commissioner's findings include: "The facts are not in substantial dispute although on some issues the inferences to be drawn therefrom may vary. * * * That at the time of his death, the employee was trimming trees, and was not engaged in an agricultural pursuit, or any operation immediately connected therewith so as to be excluded from coverage under section 85.1(3)."

Code section 86.29 in part provides: "In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive" on appeal. Section 86.30 insofar as here applicable provides any decision of the commissioner "may be modified, reversed, or set aside on one or more of the following grounds and on no other * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence * * * to warrant * * * the order or decision." No claim is made here of fraud or that the commissioner acted without or in excess of his powers.

■ We have repeatedly and consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. Murphy v. Franklin County, 259 Iowa 703, 145 N.W.2d 465, 467; Crees v. Sheldahl Telephone Co., 258 Iowa 292, 297, 139 N.W.2d 190, 193; Sister Mary Benedict v. St. Mary's Corp., 255 Iowa 847, 849, 850, 124 N.W.2d 548, 549, and citations.

■ The trial court's findings and conclusions include: "* * * a degree of mental elasticity is required for agreement that the only inference or legal conclusion that may be drawn from the evidence is that decedent, while trimming trees on urban premises pursuant to his employer's contract with the owner of said premises, was engaged in agriculture and following an agricultural pursuit or operation closely connected therewith at the time of his death." We agree. Appellants' second assigned error is without merit.

The judgment and order of the district court sustaining the finding of the industrial commissioner is—Affirmed.

All Justices concur.